The first is the errors made in the decision as to a claim for national origin. As this court is aware, there was no summary judgment motion on the issue of national origin, and in fact, Sun admitted that being a West Indian of Caribbean descent and black in the Virgin Islands was indeed a national origin. However, at the pretrial conference, Judge Savage began to discuss as if in a limiting matter that the issue of national origin was not present properly before the court on the issue. He made his mistake by interpreting the requirement of national origin to have to be associated with a sovereignty. Of course, since 1980 with the amendment of the statute, it's not your country of origin, but your place of origin. The West Indians in the Virgin Islands are indeed a national origin. They speak with a West Indian dialect. They are all predominantly descendants of slaves that were brought to the islands to manufacture and work in the cane fields. They have their own social mores and beliefs. They believe in Maka Jumbies. They have their own carnivals. They have their own culture and traditions. They are commonly referred by the white population in the Virgin Islands as the locals, and the term the locals references the term of those persons of West Indian descent that are in the Virgin Islands. Ms. Roan, for what purpose, though, were you attempting to have evidence submitted as it relates to, quote, locals? We had claimed that and could approve that Sun had a bias and a discrimination against West Indian locals. But weren't you, in effect, trying to make a form of a residency claim? No, sir. No, sir, I was not. I was making a West Indian claim. It didn't make any difference if those West Indians were from St. Kitts or Nevis or Trinidad. It was the fact that they were West Indian that they were being discriminated against. But weren't you making a black West Indian claim? Well, the nature of the West Indians is that they are black. They are all descendants of slaves and they are all black. And isn't that what Judge Savage permitted, black West Indians? No, ma'am. He would not permit any reference to the word local, which in the Virgin Islands means any West Indian. He would to black West Indians, and that's what's covered by local, isn't it? Your Honor, the problem was is that he would then tell the jury, despite admitting the evidence, that that was not what this case was about. And they were not to consider that that's what the case was about. Well, that it was about black West Indians. No, that it was about the fact that locals, which are defined in the Virgin Islands as anybody who's a West Indian, could be discriminated against. Well, isn't there even a dispute over that as to what locals means in the Virgin Islands? Well, Your Honor, I should have been able to put on evidence as to what in the Virgin Islands locals mean, but he refused to allow me to do so. He refused to allow me to ask that question. And he got confused in thinking that because you're a U.S. citizen, you can't be a national origin. Obviously, you can. There are cases where people are Cajuns, they're U.S. citizens, but they are discriminated against because of their heritage, even though they're U.S. citizens. And I think the court got confused on the issue of if you're a United States citizen, then you can be discriminated against by other United States citizens, even though you may be a national origin. The evidence is in this jurisdiction, 70.5% of our population are black West Indians who are descendants of slaves. So the consistent treatment was you are not permitted to use locals, but you were permitted to use black West Indians. Is that right? I was sometimes allowed to use black West Indians, and sometimes I could only use the word blacks. And if I used the word black West Indians, sometimes I would be allowed and sometimes the jury would be instructed that that's not what this case is about. All right. Well, where in the record were you not permitted to use, quote, black West Indians? If I said local black West Indians Where in the record were you not permitted to use, quote, black West Indians, unquote? I don't have a total recall of the record, but I did cite in my brief to the specific sections where those I was not permitted to use that termination. Let me ask you a simple question on this point. What's our standard of review? Plenary. Not abuse of discretion? No, it's an interpretation of law. It's a de novo review because it's an interpretation of the definition of national origin. His ruling was national origin had to do with sovereignty. National origin does not have to do with sovereignty. And he was in error on that. And that was his ruling. Since it was a sovereignty issue and it was tied to sovereignty, therefore, people of the same United States could be treated differently because it didn't mean there was a national origin. He misunderstood So you're arguing that point. You're not arguing the point that the court wouldn't allow you to put in evidence about locals. The discretion, the abuse of discretion is his ruling on discovery issues. I will agree it's abuse of discretion. But his ruling underlying that which was his interpretation of the law that national origin is tied to sovereignty is a de novo issue because it's not. So it's not such a simple question. No, it's, this is a very complicated case, I will agree. Well, aren't there cases in the southern circuits in which the same issue comes up between Caribbeans in various states? Maybe they don't call them black West Indians in that instance, but Caribbeans claiming to be discriminated against by others that isn't necessarily tied to sovereignty as the judge had ruled here? I'm not aware of those cases. The cases I have reviewed are the cases that hold that for instance, Cajuns in Louisiana, but because of their background coming from the French and having been speaking with the dialect, have been discriminated against and that is a national origin. Similarly, Serbs who were referred to as Serbs, there's a case that is a national origin. The second issue I'd like to get to, which I think is equally important, is the instruction on the standard of motivating factor. The court erroneously gave an instruction that was a but for instruction. The plaintiff asked for a motivating factor instruction, which is the law, as this court is aware. Under what case? Under Desert Palace and under the amendment to Title VII in which the legislature specifically amended the statute and said that the standard is motivating factor. We asked for a motivating factor. It is a Third Circuit jury charge. But isn't that a mixed motive case? Isn't that the law on a mixed motive case? Well, the And isn't it clear that you argued this is a pretext case all throughout? Your Honor, first of all, there is no such thing as a pretext case. We've said there is. Well, there's been a lot of confusion in the rulings of the Third Circuit, but the statute itself does not apply to either pretext or mixed motive. The statute says this is the standard when you're claiming disparate treatment. This is the standard. Now, the Third Circuit sometimes says pretext, sometimes mixed motives. There's no such thing as a pretext case. Well, in this case, Haas Hovensa says—I'm sorry. I'm sorry. Son. You might have said Haas Stuber, but son. Son says that Mr. Vitalis was fired because he didn't bring his keys. And you're saying he was fired because he was a black, white Indian. Now, isn't that pretext? That's also a mixed motive, because we say even if that was a factor, the reason that you fired him for daring to ask if a tool requirement was actually a valid requirement was because he was black, and you didn't want to hire him in the first place. Now, the jury would have understood that a lot better if the court hadn't excluded all the evidences of the fact they had to picket to even get referred to them for two months, and that son had previously said, we are not hiring anybody but laborers of West Indian descent because with all other people, we will be hiring stateside. And the fact that multiple occasions they falsely told the West Indian applicants that they had no openings at the same time they were hiring whites from the states. All of that evidence was excluded from the case. Let me just read to you a couple of your comments in closing. We've proved that the excuse for the way that Mr. Vitalis was treated was simply a pretext at 845. Tools is a pretext. Tools is the excuse to discriminate at 859. You can take that evidence as to whether or not the pretext was that he didn't have tools or whether or not there was indeed an intent not to hire black West Indians. I did make that statement. You used pretexts all throughout. But there's no such thing as a pretext case. That's a piece of evidence under McDonnell Douglas that says once they get this far, you can refute that by pretext. But there's really no pre, it's whether or not you were discriminated against. You want us to overrule Watson. Is that right? I think that Desert Palace has already done so. You want us to say that Desert Palace overruled Watson. Yes. I believe that Desert, the Supreme Court case that Desert Palace And unless we would do that, your argument is incorrect. No, Your Honor, because I believe that even under a pretext case, that you are still entitled if the jury wants to, to look at mixed motive. Was there more than one reason? Maybe that pretext was partially correct, but there was a mixed motive in that pretext. So I'm still entitled to a substantial fact or instruction. And the Third Circuit's own jury charge says I'm entitled to that. And the statute itself says I'm entitled to that instruction. So you want to be, you want both instructions? You want both mixed motive and pretext? I want the standard Even though the evidence was on pretext? I don't believe that the whole evidence was on pretext. The defendant's evidence was. We had a just motive for doing so. We then brought in evidence to show that that just motive, that Mr. Vitalis himself had not violated that, that motive for wanting his tools. All he had done was ask if they were sure that they were correct that tools could be brought in the refinery because he had never, ever in the eight years he worked there been allowed to bring in tools. And for that, he was summarily fired and the door slammed in his face. And we say that while they may have been correct that there was a tool requirement, the way they applied that to Mr. Vitalis of not allowing him to question it and then firing him for questioning was a mixed motive because they obviously never wanted to hire him. It was a pretext that they didn't want to hire a black West Indian so they told him he had to have tools. That was also part of our evidence because we had evidence which we wouldn't... And you were saying that they're putting that requirement on him because he was a black West Indian. And there was evidence to that effect. Isn't that the same thing, the same pretext? No, we believe we had both cases. There was evidence, which we were barely allowed to put on, that there were white workers who were witnessed who came to work and got their tools. We were forbidden to present that evidence at all at trial. So a lot of our evidence is to pretext we were not allowed to put on. We weren't allowed to put on that people were seen arriving at the airport without their tools. We weren't allowed to put on that people were in the fields without their tools. Those witnesses were barred. Okay. Ms. Renauld, we're going to have you back on the call. Thank you. Mr. Caddy. Good morning, Your Honors. If it pleases the Court, my name is David Caddy. I'm counsel on behalf of the Appellee's Son Constructors XL and Richard Dock Langner. Your Honors, this case was argued by Attorney Rone as a pretext from before trial. It was her opposition to summary judgment. As Judge Fischer pointed out, she argued pretext exclusively at trial. She never argued mixed motive. As to her argument that there is no such thing as a pretext versus a mixed motive case, that's simply not true. This Court has articulated in Stackhouse, most recently in Kang, that there are pretexts in the circuit. And quite frankly, in Desert Palace, the Supreme Court recognized there were going to be mixed motive and non-mixed motive cases. And its first footnote in Desert Palace, it says, we're not answering the question of whether or not there are pretexts. Now, the area outside of a mixed motive analysis is a pretext analysis. In every Third Circuit decision, both from Watson and beyond, this Court has determined in a pretext situation, which is absolutely what we have here. Let's change gears for a moment. Certainly. On this national origin question, Ms. Rone suggested that the District Court tied the issue of how the District Court characterized it, and based on that, how the evidence was shaped with regard to what was admissible. This case was pled by Attorney Rone as a discrimination based on race, black, and national origin, West Indian. She was permitted to argue to the jury that he was discriminated because he was black and he was West Indian. What Attorney Rone was attempting to do in this case was to say that he was discriminated against because he was a local. What that would have done to permit her to argue that, first of all, local, I'm a local, Attorney Rone's a local, anyone, and Attorney Rone's own witness, Cecil Benjamin, they posed the question right to him, well, what would be a local down here? And Mr. Benjamin worked for the Department of Labor. Anyone that lives down here works, pays taxes, and contributes to society. It has nothing to do with your race. It has nothing to do with your national origin. A local is a residency term, and that's understood here as well as everywhere in the United States. Isn't there a dispute as to that, though? I mean, shouldn't Ms. Rone have been able to put evidence on as to some would argue that locals are West Indians? Well, I think she did put evidence on to argue extensively that locals were discriminated against, but what you're going to create, then, is a mini trial. We're going to have a trial over who's a local versus who's a not local, and that's what for or through that would confuse the jury in this case. And what the court permitted was the Couldn't the jury either buy or not buy the nomenclature? I mean, we do that all the time. We do that in drug cases with regard to codes, understandings. Why couldn't we do it here? You put the evidence in front of the jury. This is what we claim that locals means. You're cross-examining in the same way that you suggested you were a local. The jury weighs it all and determines who's a local and who's a not. Is it a legitimate argument or not? I don't believe so. Actually, what Mr. Vitalis is not for national origin purposes, he is not a local for national origin purposes. He's a resident of the Virgin Islands, but that is not national. He's a St. Lucian or a West Indian. What he can't be is also I'm going to be a local, because that describes, as Judge Savage talked, you're talking about residency discrimination. And the jury is then going to be hearing argument about residency, and that's an improper grounds to consider a claim of discrimination. Attorney Rohn fled Black West Indian. She argued Black West Indian. Judge Roth, as you asked, there's nowhere in the record where Attorney Rohn was precluded at all from arguing to the jury that Mr. Vitalis was discriminated against because he was a Black West Indian. The only time she ran into trouble is when she would continuously try to argue it's discriminating against locals. Sun introduced evidence, obviously, in the case that it brought down West Indians from the United States to work here. So the whole idea that there was any local discrimination, it doesn't comport with Title VII discrimination, and it would have been inappropriate if the court had permitted that evidence. And I would have been here arguing, well, she got to go to the jury based on a residency claim rather than a national origin claim. I think the court did the correct thing. It permitted her to argue what is permitted under Title VII, race and national origin, not residency in that case. As to Attorney Rohn's argument that certain witnesses were excluded, well, in the briefs obviously she did not properly disclose those witnesses. Another important point is that Attorney Rohn wants to say, well, they saw white people getting tools. We saw white people working in the fields of the tools. And I've cited a case in the brief, you cannot use unidentified comparators. So she never proffered that she was going to identify any of these white people. She just simply wants to do, which is a very dangerous thing to do, get to the point where I saw certain white people doing X, therefore it's discrimination. It would completely preclude us from defending the case because obviously if you don't identify these white people, we can't go out and interview them and ask them questions about what happened. And on top of that, certainly Attorney Rohn didn't identify these people properly. They weren't identified in her disclosure. Her fact witnesses, in fact, were permitted to testify. Derek Hanley testified that he saw white people getting tools. So the jury heard that evidence in any event. And this claim that we weren't permitted to show that other white people were permitted to work without tools. I asked Ms. Rohn what our standard review was on this question. Basically, I think her answer was there's two questions. And one is there's the sovereignty issue, in which our review is punnery, and the other is abuse of discretion. What's your answer? I think it's abuse of discretion on both issues. And I think the local issue is, I will admit it has some legal on it, but it's also as much of a 403 issue, an evidentiary issue, because I think it would have blown some shoes into the jury. You haven't argued. Your whole argument has been it's a legal issue. You just said a moment ago that if the district court had allowed the use of locals, it would be antithetical to Title VII. I mean, that's not an evidentiary issue. For that purpose, yes, it also has 403, and that would have been, well, I'll take it back, and I'll concede your point. It is an evidentiary issue that gets punnery review. However, I still stand by the statement that it's residency or local is not a definition of national argument. It would have been inappropriate to argue that. Your Honor, as I pointed out recently in Kang, a panel of the circuit again confirmed that in a pretext case like the one here, and Kang is very similar to Vitalis, and Kang was a Haitian national who said, well, I was fired for sleeping on the job, but other non-Haitians were not fired for engaging in the same conduct. And the court noted correctly that even though the district court initially gave a motivating factor instruction, went back and said, that's a pretext case, and in pretext cases, you get the determinative factor instruction, which is the instruction that was given here, and it was the proper instruction. The only time, and you can go through the record in this case, the only time you hear mixed motive, the only time it appears in the record before the appeal, is when Attorney Roans submitted her jury instruction. She never argued mixed motive. She never even suggested mixed motive until she stood before this court today, and the simple fact of the matter, it's not, it was never a mixed motive case, and in the brief, she argues exclusively, excuse me, during trial, she argued exclusively that this is pretext. She argued a pretext case. She asked for a mixed motive instruction. She got a pretext instruction. There's no grounds for her to complain that she got the inappropriate instruction when she argued a pretext case and got a pretext instruction. So your position is that pretext clearly survived the Desert Palace? Absolutely, and I think, obviously, this Court, you should have said so, but Desert Palace explicitly says, we're not addressing the issue of whether or not Section 107 applies outside of mixed motive. So this was a, in the numbers case, 2000E-A case, not a 2000E-M case, and the Supreme Court case, I think it was Landgraf, was decided before Desert Palace, but the same thing. There's still going to be mixed motive. There's still going to be pretext cases out there, and that's, I think Watson is absolutely correct. It preceded Desert Palace, but I think even in light of Desert Palace, it's absolutely correct, and this Court's decisions since Watson have sustained that. Other circuits, in Maryland, they still use a pretext in the Second Circuit. They still use the pretext as a determinant factor. There's never been any indication from the Supreme Court that it was eliminating, and I think in Watson, this Court went through and said, if Congress intended to eliminate pretext cases, this is what it would have said. It could have said easily, excuse me, that this is the standard for discrimination in Title VII cases. It specifically applied and I believe in the notes to Section 107, it says we're addressing specifically that ruling in Price-Waterhouse, which was a mixed motive case. So Desert Palace applies only in mixed motive cases, and it only changed what evidence was required in the mixed motive cases, saying that you didn't need direct evidence. You could still proceed with circumstantial evidence, but that's not what we have the issue here. The issue here is plainly that Attorney Rohn argued pretext and got a pretext instruction. It's not the instruction she wanted, but it's the proper legal instruction in the case. Furthermore, in the brief, Attorney Rohn argued that it was unfair that the Court excluded some of her witnesses, but we had Kid Joseph testify. He was a black West Indian that lived in the United States. That son brought down here. She indicates that we didn't properly disclose him. The record clearly shows he was disclosed. In our disclosures, in fact, Attorney Rohn's co-counsel, Mary Faith Carpenter, spoke directly with Mr. Joseph. So the attempt to equivocate or to say these things are good for the good should have been good for the gander is simply not true. Our witnesses were disclosed to Attorney Rohn, and she had the fact that Mr. Vitalis mentioned a single name in his deposition, as the Third Circuit against Muldrow points out. That's not sufficient. You can't just say a name during a deposition. If that were the standard, we'd have to depose every person named in a deposition. It would spiral out of control because, of course, if I depose that witness, he'll certainly say another name. We'll have to depose him and him and him. The obligation was on the plaintiff here to disclose to us who the witnesses were going to be. That's how you run an individual trial. Attorney Rohn didn't do that in this case. Thank you. Mr. Caddy, we'll hear from Ms. Blair on behalf of Hovenza and others. Good morning. My name is Linda Blair, and I represent Hovenza. I will be very short and succinct. The only issue that involves Hovenza in this matter was the granting of the summary judgment motion was whether or not Hovenza could be held liable as a joint employer with Sons. The standard to determine whether or not Hovenza could be held liable would be whether or not they hired, fired, disciplined, directly supervised, maintained time records and payroll, provided insurance, participated in the collective bargaining process. That has been the established standard for quite some time, both in this jurisdiction and in the Third Circuit. What about the claim that a contract was produced and then later it was said, well, this wasn't a contract, it was an oral contract? There was some confusion about the contract. Initially, Hovenza did not know what Sons had intended to hire Mr. Vitalis for. In initial discovery, the only contract that Hovenza had just given the date because Hovenza did not participate in any way in the hiring of Mr. Vitalis and had no records on that or no one to ask them with regards to what he was being hired for because that was done by Sons. They initially looked at the dates and simply determined that the EBU contract was the contract that was in effect at that time period. However, it was not until Doc Langer testified on behalf of Sons when Doc said that his intent to hire Mr. Vitalis was for this expander project. Well, the EBU contract that we had produced did not cover the expander project. That was a construction project being built by GE on behalf of Hovenza. GE was acting as the general contractor and was hiring various subcontractors to manage that. Sons was asked to take over a portion of that work when the original subcontractor could not complete it. Therefore, they stepped in and did it. It was for a very short duration. There was conflicting testimony about whether or not the agency agreement that Hovenza eventually found was actually executed. It doesn't look like it ever was, or whether there was some sort of oral agreement. But the testimony and evidence is clear that whatever contract it was, whether it's under the EBU contract that was initially produced, which was a lump sum contract, or whether it was under the proposed unexecuted agency agreement, or whether it was some oral agreement for the short duration construction project, Hovenza does not fit the criteria under any of those contracts for a joint employer. And I see my time is up. Okay. Thank you, Ms. Black. Ms. Rohn? Ms. Rohn, I— Go ahead. Go ahead. Thank you. Ms. Rohn, I had one question about the locals and then maybe we can put it to you on this. As I understand it, the district court allowed you to argue Black West Indians throughout. Yes? I wouldn't say throughout. Because that's obviously what you argued to the jury. I wouldn't say throughout. But that's obviously what you argued to the jury. Yes. Right. Okay. So we've spent a lot of time on locals. If you're permitted, in this instance, to argue that Mr. Vitalis is a Black West Indian and, as such, he's suffered, what advantage would adding locals to the mix have given you? Well, the problem was that, for instance, Mr. Vitalis, who's not from St. Croix but is from Down Island, is referred to as a local. But the judge made a ruling that said locals meant anybody from the Virgin Islands. So many of the witnesses, because our colloquial way of speaking here was when we speak of the West Indians, we call them locals. So if a witness said, a local came in and I sent him over, the judge would forbid that testimony because the word used was local by the witness instead of Black West Indian, although that's what was meant. So you fixed that by saying it was your understanding that a local is a Black West Indian. The witness would say yes, and then you'd move on. I wasn't allowed to ask that question. I was forbidden. Once that happened, if I would say, can I ask this question? Objection sustained. Objection sustained. I was never allowed to have witnesses explain that when they used the term local, they were referencing solely Black West Indians of wherever they were from. And the transcript is replete of objections sustained. When I tried to cross-examine Cecil Benjamin as to the majority of the people sent, whether or not whites were people who were locals, the people who were being sent by the Department of Labor, what was their national origin, I was not allowed an answer to that question. When I was asked, asked Doc Langner, at Trimpton to ask Doc Langner if he referred to Mr. Vitalis as a local, showing that he was indicating West Indian, I was not allowed to ask that question. So that line of questioning I was barred from. I want to talk about... Okay, my question. Oh, sorry, I forgot. Sorry. If this is a mixed motive case, what are the mixed motives? One, that he rightfully believed that Mr. Vitalis should have had tools, and that that was true, but that the reason that he fired Mr. Vitalis was not actually because he didn't have his tools alone, but because he used that, he reacted to Mr. Vitalis not having his tools on that day in a discriminatory manner and fired him because he was West Indian. But isn't that pretext? No, because the jury could believe that, yes, there is a requirement to have tools, but that that was not the sole motivating factor for why he fired him. The evidence was that Mr. Vitalis wasn't even reporting for work that day. He'd just taken his right to know, went over to tell Mr. Langner he got his right to know, and Mr. Langner said, where are your tools? And he said, I'm not even appearing to work, and you were supposed to find out if I could get tools, and he said, you don't have tools, you're fired. All right, and that was the pretext that he was a black West Indian. No, I think the jury, and the jury clearly had a mixed motive because they sent out the note saying, can there be more than one motive for why this happened? And the judge sent back an instruction that said, it's a one, not many. So the jury themselves clearly saw this as a mixed motive case because that's the note they sent, and they were misinstructed to say, no, you can't consider mixed motive. So, I mean, that was the juror's question. Could there be more than one motive? Could there be more than one cause for the firing? And they got the but for instruction on a mixed motive question. I want to talk about Chang that was talked about by the, that case actually had nothing to do with whether or not you could give a mixed motive or pretext. The actual, the court actually gave a motivating factor instruction in that case, and the actual issue before the court was whether the district court's instruction on the permissible forms of evidence to prove discrimination were proper or not. Now, I want to switch real quickly to Hovind, and also want to strike this court to Vereen and Ambruster, both of which are out of our circuit who hold that there is now no longer a distinction between mixed motive and pretext, and that you're entitled to have both instructions under the law now. As to the summary judgment motion, Hovind represented for four years that that was the correct contract, not just initially in disclosure. We argued about parts of that contract which they represented worthy contract for four years in this case, and then all of a sudden they came out with some other contract, and then they agreed that wasn't it, and then there was an oral contract. The problem is, is that there was a lot of evidence that the court made that decision instead, although they had made admissions previously that the original EDU contract was the contract that controlled, and that contract provided any other work that you do will be included in this contract, even if not specifically named. And that contract provided all kinds of control. There had to be manpower request forms. They had to prove who was being hired. They had to prove the management team. They had to approve jury ranges. They had to abide by their rules and regulations. There was ample evidence under the EDU contract of control to go to the jury. The court made the error of deciding that it would rule as a matter of law which contract applied, although there was tons of questions of fact as to which was the proper contract. All right. Thank you. Well, thank you, Ms. Miller. And we thank both counsels for a case that was very well reviewed by us.